529 A.2d 44

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant *v.* Ralph L. Bender, Appellee.

Submitted on briefs June 8, 1987, to Judges MAC-PHAIL and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Harold H. Cramer*, Assistant Counsel, with him, *Jay C. Waldman*, General Counsel, and *Spencer A. Manthorpe*, Chief Counsel, for appellant.

*George B. Ditter*, with him, *Stephen P. Imms*, and *Gerhard P. Dietrich, Jenkins, Tarquini & Jenkins*, for appellee.

OPINION BY SENIOR JUDGE BARBIERI, July 20, 1987:

In this driver's license suspension case, the Department of Transportation, Bureau of Driver Licensing (Bureau), appeals here an order of the Court of Common Pleas of Montgomery County sustaining the appeal of a motorist, Ralph L. Bender, Appellee, from a Bureau suspension order. The Bureau suspended Bender's driving privileges for one year under Section 1547 of the Vehicle Code, 75 Pa. C. S. §1547, commonly referred to as the "Implied Consent Law." We reverse.

Bender was stopped by a Pennsylvania State Trooper after the trooper observed his vehicle being operated

in a reckless manner on the eastbound Pennsylvania Turnpike in Montgomery County. After he was pulled over to the side of the road, the trooper detected an odor of alcohol on Bender's breath and noticed that he was unsteady on his feet. Based upon these observations, the trooper placed him under arrest for driving under the influence and advised him of his *Miranda*[1] rights. The trooper also asked Bender to consent to take a breathalyzer test to which he agreed.

Bender was transported to the Plymouth Meeting State Police Barracks where the test was to be administered. It was approximately 12:00 midnight. The breathalyzer required a twenty minute warm-up period during which time the trooper advised Bender of the Implied Consent Law and warned him that his license would be suspended if he refused to take the test. Bender was a New Jersey resident and held a New Jersey driver's license. At approximately 12:10 in the morning he was again apprised of his *Miranda* rights at which time he requested to speak with his attorney over the telephone. He was not allowed to do so. At 12:24, after the breathalyzer was warmed up, Bender was asked to take the breathalyzer. At that time, he refused to do so until he had an opportunity to speak with his attorney. The troopers treated his response as a refusal and shut off the breathalyzer. Bender was permitted to call his attorney at 12:29 a.m. after which he indicated he was willing to take the test. The troopers indicated that it was too late and did not administer the test. The common pleas court found that the five minute period between Bender's refusal and subsequent assent to take the breathalyzer was not "substantially short of an unqualified, unequivocal assent" to take a breathalyzer. *Commonwealth v. Bender*, 115 Montg. 76, 81 (Pa.C.P.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1984). Additionally, the common pleas court held the warnings given by the trooper that Bender's driver's license would be suspended if he refused the test was erroneous since the Bureau did not have the authority to suspend a New Jersey driver's license, misled him and made his refusal neither knowing nor voluntary. *Id.*

Before this Court, the Bureau argues that the common pleas court erred by (1) concluding Bender's initial refusal, followed five minutes later by an assent, to the breathalyzer was not substantially short of an unqualified and unequivocal assent; and (2) the trooper's warning that Bender's New Jersey driver's license would be suspended if he refused the breathalyzer did not negate the knowing and voluntary nature of Bender's refusal to take the breathalyzer. We shall discuss those issues in the order stated, keeping in mind that we must affirm the common pleas court unless its findings are not supported by substantial evidence or an error of law was committed. *Hando v. Commonwealth,* 84 Pa. Commonwealth Ct. 63, 478 A.2d 932 (1984).

This Court has held that under the Implied Consent Law, anything substantially less than an unqualified unequivocal assent to take a breathalyzer test constitutes a refusal. *Department of Transportation, Bureau of Traffic Safety v. Wroblewski,* 65 Pa. Commonwealth Ct. 333, 442 A.2d 407 (1982). The facts here are undisputed. Bender initially agreed to take a breathalyzer test upon his arrest on the side of the Pennsylvania Turnpike. After he was transported to the Plymouth Meeting barracks, he was again asked to submit to the test while the machine was warming up. At that point, he asked to speak with his attorney. After the machine was warmed up, he was again asked to take the breathalyzer test at which point he refused until he spoke with his attorney. After he smoked a cigarette and spoke with his attorney, he agreed to take the test. A period of

approximately five minutes elapsed from his refusal to his subsequent assent, during which time he was not observed by the troopers. *Bender,* 115 Montg. at 78.

While the factual determination as to whether a motorist refused to submit to a breathalyzer is for the common pleas court, *Budd Appeal,* 65 Pa. Commonwealth Ct. 314, 442 A.2d 404 (1982), the issue of whether a motorist's conduct, as found by the common pleas court, constitutes an unqualified, unequivocal assent, is a question of law properly reviewable by this Court. Here, the common pleas court found that there was a refusal followed five minutes later by an assent. The common pleas court also found as a fact that Bender's refusal at 12:24 a.m. and his subsequent assent at 12:29 a.m. was not substantially short of the unqualified, unequivocal assent required by 75 Pa. C. S. §1547. *Bender,* 115 Montg. at 78. The common pleas court clearly misstated that conclusion as a finding of fact rather than as a conclusion of law, which it properly is. A "finding of fact," such as lies within the sole prerogative of the factfinder, properly pertains to the actual events or conduct that occurred during the time period in question. A "finding of fact," therefore, is a determination by the finder or trier of fact that certain things do exist or that certain events or conduct actually occurred. By contrast, a "conclusion of law" is the application of the facts established by the fact-finder, here the common pleas court, and applying them to the applicable law. Therefore, the question whether a motorist's conduct as found by the common pleas court constitutes an unqualified, unequivocal assent to take a breathalyzer test is a question of law properly reviewable by an appellate court.

The facts here are strikingly similar to those present in *Wroblewski* where the motorist asked to have his attorney present for the administering of the breathalyzer test. The police officer initially agreed and delayed the

test for approximately twenty minutes. After twenty minutes had elapsed and the motorist's attorney had not appeared, the officer asked the motorist to take the test without his attorney being present and the motorist refused. The attorney appeared a few minutes later and the motorist changed his mind and agreed to take the test. 65 Pa. Commonwealth Ct. at 334-335, 442 A.2d at 408. There, we specifically held that a refusal to take a breathalyzer test is not vitiated by a subsequent consent and request to take the test. 65 Pa. Commonwealth Ct. at 335-336, 442 A.2d at 408. *See also Commonwealth v. O'Rourke,* 25 Pa. Commonwealth Ct. 580, 361 A.2d 496 (1976). Bender's 12:24 a.m. refusal to take the test, therefore, was not vitiated by his change of heart at 12:29 a.m. and his actions do fall substantially short of the unqualified, unequivocal assent required by 75 Pa. C. S. §1547. The common pleas court erred in holding otherwise.

Bender's other contention, also accepted by the common pleas court, is that the trooper's warning that his New Jersey driver's license would be suspended if he refused to consent to a breathalyzer test, was so erroneous that it made it impossible for him to make a knowing and intelligent decision as to whether or not to submit to a breathalyzer. We respectfully disagree and hold that the trooper's warnings were sufficient under 75 Pa. C. S. §1547 to enable Bender to make a knowing and conscious choice as to whether or not to take the breathalyzer test.

We agree that the warning the trooper gave Bender regarding the suspension of his New Jersey driver's license was erroneous. There can be no question that Pennsylvania authorities have no power to revoke or suspend a driver's license issued by a sister state, here New Jersey. That lack of authority is recognized by Section 1546 of the Vehicle Code, 75 Pa. C. S. §1546, that

provides that a nonresident's privilege to drive a motor vehicle in this Commonwealth is subject to suspension in the same manner as that of a resident. *See McGhee v. Commonwealth,* 85 Pa. Commonwealth Ct. 310, 481 A.2d 1237 (1984), *appeal dismissed,* 510 A.2d 488, 509 A.2d 1255 (1986). Therefore, while the Bureau could not suspend Bender's New Jersey driver's license, it could suspend his driving privileges within this Commonwealth for a refusal to submit to a breathalyzer.[2]

Section 1547(b)(2) of the Vehicle Code, 75 Pa. C. S. §1547(b)(2), imposes the duty upon the requesting officer to warn the motorist that his or her driving privileges will be suspended if they refuse to submit to chemical testing. Here, the trooper warned Bender that his New Jersey driver's license would be suspended if he refused to submit to the requested breathalyzer. While the warning was erroneous, we do not believe it invalidated the breathalyzer request nor excused Bender's refusal to submit to the test. The statutory warning was required by the General Assembly in order to inform motorists that their driving privileges would definitely be suspended if they refused to submit to a chemical test, such as a breathalyzer. This information, the General Assembly apparently felt, was necessary for the motorist to make a knowing and conscious decision to take or not to take the test with full knowledge of the consequences of a refusal. Thus, the key ingredient of the warning is the loss of driving privileges if the test is refused. On previous occasions, we have upheld warnings by police officers that have not been letter perfect.

---

[2] We also note that under Section 1546(b) of the Vehicle Code, 75 Pa. C. S. §1546(b), the Department of Transportation does transmit a certified copy of the suspension action to the motorist's state of residence if a reciprocity agreement with that particular state exists. There is no evidence in the record that New Jersey has such an agreement with Pennsylvania.

For example, in *Department of Transportation, Bureau of Traffic Safety, v. March,* 101 Pa. Commonwealth Ct. 171, 515 A.2d 661 (1986), we upheld as effective an officer's warning that a motorist's license would be suspended for six, rather than the correct twelve, months upon refusal. There, we held the incorrect length of suspension did not negate the validity of the warning as the officer is not required to state the length of the suspension. In *March,* the threatened sanction, a six month suspension, was actually less than the sanction imposed, a one year suspension. We similarly held in *Department of Transportation, Bureau of Traffic Safety v. Sinwell,* 65 Pa. Commonwealth Ct. 605, 450 A.2d 235 (1982). The warning given by the trooper to Bender was sufficient to apprise him that his driving privileges would be suspended automatically if he refused to take the breathalyzer. We thus distinguish the circumstances here from those present in *Binder v. Commonwealth,* 99 Pa. Commonwealth Ct. 548, 513 A.2d 1105 (1986), where the officer erroneously informed the motorist that he had a choice of which test he could take when in fact the law did not give him that right. There, the erroneous warning misled the motorist to believe that he could refuse one test in favor of another. We likewise distinguish the circumstances here from our line of cases that hold a warning is ineffective under 75 Pa. C. S. §1547(b)(2) if it only warns that a motorist's driving privileges "could" or are "subject to" suspension rather than "will" be suspended. *See e.g., Department of Transportation, Bureau of Traffic Safety v. Landau,* 91 Pa. Commonwealth Ct. 646, 498 A.2d 47 (1985); *Everhart v. Commonwealth,* 52 Pa. Commonwealth Ct. 381, 416 A.2d 587 (1980). Finally, we distinguish the circumstances present here from those present in *Sickman v. Commonwealth,* 79 Pa. Commonwealth Ct. 173, 468 A.2d 909 (1983), relied upon by the common pleas

court. In *Sickman,* the motorist was required to submit to both a performance test and complete a questionnaire, in addition to taking a breathalyzer. There, we held that her refusal to take a breathalyzer after being informed that the breathalyzer was only one part of a required procedure and that a refusal to perform any part would result in a suspension of her license did not constitute a refusal under 75 Pa. C. S. §1547 since the officers at no time informed her that submitting to the breathalyzer alone would be sufficient to avoid the suspension of her license. 79 Pa. Commonwealth Ct. at 175-176, 468 A.2d at 910. Here, the trooper in no uncertain terms informed Bender his license *would* be suspended if he refused the test. Bender was also aware that all he needed to do to avoid that suspension was to submit to the breathalyzer. Unlike the situation in *Sickman* and in *Maffei v. Department of Transportation,* 53 Pa. Commonwealth Ct. 182, 416 A.2d 1167 (1980), the trooper made it abundantly clear to Bender that all he was required to do to avoid the automatic suspension was simply take the breathalyzer. In *Sickman* and *Maffei,* the motorist was told he or she was required to perform additional tasks other than a breathalyzer in order to avoid license suspension. We do not think the trooper's unfortunate reference to Bender's New Jersey license negates the effectiveness of that warning. We thus conclude that the warning provided was sufficient to meet the requirements of 75 Pa. C. S. §1547(b)(2) and that Bender's refusal of 12:24 a.m. was a conscious and knowing refusal mandating a suspension of his driving privileges in Pennsylvania under 75 Pa. C. S. §§1546 and 1547.

The order of the common pleas court will be reversed and the Bureau's suspension order will be reinstated.

484

ORDER

Now, July 20, 1987, the Order of the Court of Common Pleas of Montgomery County at Docket No. 84-01574, Civil Division, dated June 25, 1984, is hereby reversed and the Order of the Department of Transportation, Bureau of Traffic Safety, suspending the operating privileges of Ralph L. Bender, is hereby reinstated.

Judge MACPHAIL dissents.