## PennDOT v. Getty

*Craig Sopin,* for the commonwealth.
*Julie T. Barsel,* for defendant.

D'ALESSANDRO, *J.,* November 8, 1988 — The following opinion is written in support of this court's order dated September 15, 1988 sustaining the license suspension appeal of Robert Charles Getty from the Department of Transportation, Bureau of Driver Licensing's suspension order.

Mr. Getty was stopped and placed under arrest on the early morning of August 12, 1987 after he was observed driving his vehicle in an irregular manner. The arresting officer testified that Getty's vehicle was veering across the median strip on the street upon which he was traveling. As a result, the officer signalled him to pull to the side of the road. After

Mr. Getty complied, the officer then approached the vehicle and instructed Getty to get out of his car. Upon doing this, the officer then detected the smell of alcohol on Getty's breath. He further noticed that Mr. Getty appeared unsteady on his feet. Based upon these observations, the officer placed him under arrest for driving while under the influence of alcohol.

Mr. Getty was then taken to the Police Administration Building for the administering of a breathalyzer test. The officer in charge of conducting the breathalyzer test received Mr. Getty into the room and placed an information sheet in front of him concerning the test. He also orally described to him the consequences of refusing to take the test. He then asked Mr. Getty whether or not he was going to take the test. Mr. Getty was asked this question approximately four or five times during the next several minutes. On each occasion, he responded by saying that he did not know. When Mr. Getty finally concluded that he would submit to a breathalyzer test, some five to seven minutes after initially being asked to submit, the officer refused to administer the test. Consequently, the Department of Transportation suspended his operating license. Following that action, Mr. Getty filed an appeal to this court.

The question before the court is whether Mr. Getty's conduct amounted to a refusal to take a breathalyzer test under the applicable provisions of section 1547 of the Vehicle Code. 75 Pa.C.S. §1547. We believe that it did not.

The applicable provisions of section 1547 read as follows:

§1547. Chemical testing to determine amount of alcohol or controlled substance —

"(a) *General rule* — Any person who drives,

operates or is in actual physical control of the movement of a motor vehicle in this commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

"(1) While under the influence of alcohol or a controlled substance or both; or (2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

"(b) *Suspension for refusal* —

"(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

"(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing."

The law in this area is clear. After being informed of the consequences of refusing to submit to a breathalyzer, a subsequent refusal by a driver "mandates suspension of his operator's license." *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. Tillitt,* 49 Pa. Commw. 343, 346, 411 A.2d 276, 277 (1980); *Department of Transportation, Bureau of Traffic Safety v. Pedich,* 44 Pa. Commw. 44, 47, 403 A.2d 181, 182 (1979), Accord-

582

ing to the Commonwealth Court, refusal has been consistently defined as "anything substantially short of an unqualified, unequivocal assent" to an officer's request to submit to chemical testing. *Id.*

In the opinion of this court, Mr. Getty's inability to reach a decision as to whether to submit to a breathalyzer test, which spanned a period of five to seven minutes from the time he was initially asked to submit, does not rise to the level of a refusal as that term has been defined by the Commonwealth Court. Mr. Getty's delay in consenting to the test was not *"substantially* short of an unequivocal assent" in light of the attendant facts. This having been the first time that Mr. Getty was placed under arrest, taking into consideration the nervousness concomitant with being placed in this position, it was not unreasonable for him to hesitate for several minutes before reaching the final determination concerning a decision of this magnitude.

Moreover, since Mr. Getty did not initially decline to take the test and thereafter consented, the case law put forth by the commonwealth simply isn't applicable to the instant case. It is argued by the commonwealth that a refusal to take a breathalyzer test is not vitiated by a subsequent consent and request to take the test, even when the consent comes only minutes after the refusal. *Commonwealth v. O'Rourke,* 25 Pa. Commw. 580, 361 A.2d 496 (1976); *Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing v. Ralph L. Bender,* 107 Pa. Commw. 475, 529 A.2d 46 (1987). However, as previously stated, the evidence presented indicates that Mr. Getty never refused to take the test, but instead responded to the numerous requests with the answer that he did not know. This court does not view such a

response as a refusal, given the short time frame in which Mr. Getty was given to respond.

Nor does this court believe that Mr. Getty's failure to respond can be considered delaying tactics, which under the *O'Rourke* holding amounts to a refusal to take the test. In *O'Rourke,* a passage of some 30 to 40 minutes expired prior to defendant's consenting to the breathalyzer test, wherein the court concluded that "such delay amounted to a refusal to take the test." *Commonwealth v. O'Rourke,* 25 Pa. Commw 580, 361 A.2d 496 (1976). It further stated that "the rapidity with which the passage of time and physiological processes tend to eliminate evidence of ingested alcohol in the system. . . . The occasion is not one for debate, maneuver or negotiation, but rather for a simple 'yes' or 'no' to the officer's request." *Id.* at 587, 361 A.2d at 497. While this may be the case where considerable time passes prior to an individual's consent but where, as here, only a few minutes passed before Mr. Getty gave his consent, that rationale is inapposite. Therefore, the time that Mr. Getty spent processing the officer's request can not be considered as delay tactics.

In sum, the license suspension appeal of Robert Charles Getty is granted based on the reasons stated above.