604 A.2d 1135

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**John CERN, III, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 22, 1991.

Decided Feb. 24, 1992.

648

Timothy P. Wile, Asst. Counsel-in-Charge of Appellate Section, for appellant.

John J. Kerrigan, for appellee.

Before COLINS and KELLEY, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) appeals an order of the Court of Common Pleas of Bucks County (common pleas court) which sustained the appeal of John Cern, III (Cern), from a five-year revocation of his operating privilege within Pennsylvania imposed by DOT pursuant

to Section 1542 of the Vehicle Code (Code), 75 Pa.C.S. § 1542.[1] We will reverse.

On March 1, 1985 and, again, on April 25, 1985, Cern, while a Pennsylvania resident with a Pennsylvania driver's license, committed two offenses enumerated in Section 1542 of the Code for which he accepted Accelerative Rehabilitative Dispositions (ARDs).[2] Prior to committing his third offense on January 17, 1990, Cern moved to New Jersey and surrendered his Pennsylvania driver's license to New

1. § 1542. Revocation of habitual offender's license

 (a) General rule.—The department shall revoke the operating privilege of *any* person found to be a habitual offender pursuant to the provisions of this section. A 'habitual offender' shall be any person whose driving record, *as maintained in the department,* shows that such person has accumulated the requisite number of convictions for the separate and distinct offenses described and enumerated in subsection (b) committed after the effective date of this title [Title 75] and within any period of five years thereafter.

 (b) Offenses enumerated.—Three convictions arising from separate acts of any one or more of the following offenses committed either singularly or in combination by any person shall result in such person being designated as a habitual offender:

 (1) Any offense set forth in section 1532 (relating to revocation or suspension of operating privilege).

 . . . .

 (c) Accelerative Rehabilitative Disposition as an offense.—Acceptance of Accelerative Rehabilitative Disposition for any offense enumerated in subsection (b) shall be considered an offense for the purposes of this section.

 (d) Period of revocation.—The operating privilege of any person found to be a habitual offender under the provisions of this section shall be revoked by the department for a period of five years.

(Emphasis added.) Here, the record indicates that Cern was convicted twice under Section 3731 of the Code, 75 Pa.C.S. § 3731, for driving under the influence of alcohol or a controlled substance and once under Section 3733 of the Code, 75 Pa.C.S. § 3733, for fleeing or attempting to elude a police officer. Driving under the influence of alcohol or a controlled substance and fleeing or attempting to elude a police officer are offenses set forth in Section 1532 of the Code, 75 Pa.C.S. § 1532. The record likewise indicates that these offenses were committed within a five-year period. The dates the offenses were committed are, of course, the relevant dates in making this determination. *Sanders v. Department of Transportation, Bureau of Traffic Safety,* 89 Pa.Commonwealth Ct. 609, 493 A.2d 794 (1985).

2. Acceptance of ARD constitutes an offense for purposes of determining habitual offender status. Section 1542(c) of the Code, 75 Pa.C.S. § 1542(c); *Brophy v. Department of Transportation,* 94 Pa.Commonwealth Ct. 310, 503 A.2d 1010 (1986).

Jersey authorities in order to secure a valid New Jersey driver's license.[3]

In June 1990, DOT advised Cern by official notice that his driving privileges were scheduled to be revoked for five years pursuant to Section 1542(a) of the Code, 75 Pa.C.S. § 1542(a). This official notice was sent to Cern's former Pennsylvania address which was the only address listed for Cern in DOT's records.[4]

Cern timely appealed DOT's revocation of his driving privileges and, after *de novo* hearing, the common pleas court sustained his appeal, stating:

> At the time of the hearing this Court examined the official notice sent to the Appellee [Cern]. As previously stated[,] this notice (sent by Pennsylvania) was sent to Appellee at his old address in Pennsylvania. The citation clearly shows his address to be Trenton[,] New Jersey[,] so that the State of Pennsylvania was on notice that the Appellee was no longer a resident. Additionally, there can be no question that Pennsylvania authorities have no power to revoke or suspend a driver's license issued by a sister State, here New Jersey. *Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing v. Bender*, 107 Pa.Cmwlth. 475, 529 A.2d 44 (1987). The notice asks him to return his driver's license to the Bureau. The Appellee had already complied with the requirements of the notice, he had *already* surrendered his Pennsylvania license.

**3.** The record indicates that Cern applied for a New Jersey driver's license on January 12, 1990. A receipt therefor, marked paid but not dated, indicates an expiration date for Cern's New Jersey driver's license as being January 31, 1994; not January 12, 1994. This leads us to question whether Cern, in fact, was in possession of a valid New Jersey driver's license at the time of his third offense on January 17, 1990. This issue, however, has not been raised. Accordingly, for purposes of this appeal, we will treat Cern as possessing a valid New Jersey driver's license at the time of his third offense on January 17, 1990.

**4.** The citation issued to Cern for his third offense, however, noted a New Jersey address.

*Department of Transportation v. Cern* 9 Pa.D. & C. ——,
175, 177–78 (1991) (emphasis in original).[5] It is from this
determination that DOT filed the instant appeal.

 Two issues are before us for disposition: (1)
whether DOT has the power and authority to revoke the
operating privilege of a nonresident motorist as a habitual
offender for offenses committed in Pennsylvania and (2)
whether a motorist's act of surrendering a Pennsylvania
driver's license to another jurisdiction in order to secure a
driver's license from that other jurisdiction insulates the
motorist from revocation of his or her Pennsylvania operat-
ing privilege upon conviction of offenses committed in Penn-
sylvania which mandate revocation of the motorist's Penn-
sylvania operating privilege. This court's scope of review,
of course, includes questions of law. *McGhee v. Common-
wealth of Pennsylvania,* 85 Pa.Commonwealth Ct. 310, 481
A.2d 1237 (1984), *appeal dismissed as having been improv-
idently granted,* 510 Pa. 488, 509 A.2d 1255 (1986).

Pursuant to Section 1546(a) of the Code, 75 Pa.C.S.
§ 1546(a), "[t]he privilege of driving a motor vehicle on the
highways of this Commonwealth given to a nonresident
shall be subject to suspension or revocation by the depart-
ment in like manner and for like cause as a resident's
operating privilege." This section has been previously ap-
plied by this court to uphold suspensions of nonresident
motorists' driving privileges within Pennsylvania pursuant
to Sections 1547 and 1539 of the Code, 75 Pa.C.S. §§ 1547,
1539.

In *Department of Transportation, Bureau of Driver
Licensing v. Bender,* a nonresident motorist's driving privi-
lege within Pennsylvania was suspended by DOT pursuant
to Section 1547 of the Code, 75 Pa.C.S. § 1547, for failure to
submit to chemical testing. On appeal, we stated:

> There can be no question that Pennsylvania authorities
> have no power to revoke or suspend a *driver's license*
> issued by a sister state, here New Jersey. That lack of

**5.** This opinion was written in support of the order filed by the
common pleas court on January 17, 1991. Pa.R.A.P. 1925(a).

authority is recognized by Section 1546 of the Vehicle Code, 75 Pa.C.S. § 1546, that provides that a nonresident's privilege to drive a motor vehicle in this Commonwealth is subject to suspension in the same manner as that of a resident. See *McGhee v. Commonwealth*, 85 Pa.Commonwealth Ct. 310, 481 A.2d 1237 (1984), appeal dismissed, 510 [Pa.] 488, 509 A.2d 1255 (1986). Therefore, while the Bureau could not suspend Bender's New Jersey driver's license, it could suspend his *driving privileges* within this Commonwealth for a refusal to submit to a breathalyzer.

*Bender*, 107 Pa.Commonwealth Ct. 475, 480–481, 529 A.2d 44, 46 (1987), *reversed on other grounds*, 522 Pa. 104, 560 A.2d 123 (1989) (emphasis added).

Likewise, in *McGhee*, this court held that DOT could suspend a nonresident motorist's operating privilege within Pennsylvania as a "second time" offender pursuant to Section 1539 of the Code, 75 Pa.C.S. § 1539.[6] Judge Blatt, speaking for this court, reasoned as follows:

Section 1535(a) of the Vehicle Code, 75 Pa.C.S. § 1535(a) provides, in part, that:

A point system for driver education and control is hereby established *which is related to other provisions for use, suspension and revocation of the operating privilege* as specified under this title. Every driver licensed in this Commonwealth who is convicted of any of the following offenses shall be assessed points as of the date of violation.... (Emphasis added.)

The appellant would have us limit the assessment of points to drivers currently licensed in this Commonwealth. Section 1546(a) of the Vehicle Code, 75 Pa.C.S.

6. McGhee's operating privilege within Pennsylvania was suspended when he accumulated 11 points. After expiration of this suspension, three points were deducted from his point total. He then moved to West Virginia where he surrendered his Pennsylvania driver's license in order to secure a valid West Virginia driver's license. Thereafter, he was convicted for speeding in Pennsylvania which brought his total point accumulation to 11 for the second time.

§ 1546(a) empowers DOT to suspend or to revoke the 'privilege of driving a motor vehicle on the highways of the Commonwealth given to a non-resident ... *in like manner and for like cause* as a resident's operating privilege.' Id. While a non-resident is exempt from the licensing requirements of the Vehicle Code under 75 Pa.C.S. § 1502(3), we believe that, when Sections 1535(a) and 1546(a) are read in pari materia, it is clear that a non-resident is exempt from neither the assessment of penalty points nor any consequent suspension of his operating privileges if he abuses such privileges while driving in Pennsylvania.

*Id.* 85 Pa.Commonwealth Ct. at 312–313, 481 A.2d at 1238 (emphasis in original).

Finding no reasonable basis upon which to distinguish the instant case from *Bender* and *McGhee,* we conclude that DOT, by virtue of Section 1546(a) of the Code, 75 Pa.C.S. § 1546(a), could revoke Cern's operating privilege within Pennsylvania as a habitual offender for offenses he committed in this Commonwealth pursuant to Section 1542 of the Code, 75 Pa.C.S. § 1542.

■ Cern argues, however, that DOT lacked the authority to act under Section 1542 because the record contains no evidence to indicate that DOT maintains the records referred to in Section 1542 for nonresident motorists and, thus, application of habitual offender status to him is not supported. We disagree.

DOT is clearly required by law to maintain the types of records referred to in Section 1542 for all drivers. *See* Sections 1531, 6322, 6323 and 6325 of the Code, 75 Pa.C.S. §§ 1531, 6322, 6323, 6325.[7] A *prima facie* presumption

7. Section 1531 directs DOT to "administer an integrated system limited to the authority granted to [it] in [Title 75] for revocation and suspension of operating privileges and for driver education, testing and control and for this purpose shall *maintain* a record as to *every* driver of convictions of offenses set forth in [Title 75] and such other convictions and offenses as are punishable by suspension or revocation under [Title 75]." (Emphasis added.)

exists, until the contrary appears, that DOT has acted according to law.[8] The record here contains nothing to rebut this presumption.

■ Regarding the second issue, we initially note that the terms, driver's license and operating privilege, are not interchangeable under the Code.[9] Section 1542, pursuant to which DOT acted here, applies only to operating privileges. The notice of revocation issued to Cern by DOT clearly states that Cern's *"driving privileges* [were] being revoked for a period of 5 years as mandated by Section 1542 A of the Vehicle Code." (Emphasis added.) Accordingly, it was not Cern's driver's license that DOT acted to revoke and therefore his act of surrendering his Pennsylvania driver's license to New Jersey authorities in order to secure a valid New Jersey driver's license would not insulate him from revocation of his operating privilege within Pennsylvania.[10]

■ Cern argues, however, that DOT was, in fact, acting to revoke his New Jersey driver's license because the notice

Sections 6322–6323 ensure DOT's receipt of records of *all* judgments of conviction, acquittal or other disposition of charges under any of the provisions of Title 75. Section 6325 requires DOT to "file *all* reports and records received under the provisions of [Subchapter B of Chapter 63 of Title 75]" and to *"maintain* suitable records or facsimiles of the records." (Emphasis added.)

8. *See, e.g., McIntosh Road Materials Co. v. Woolworth,* 365 Pa. 190, 74 A.2d 384 (1950); *Erie City v. Piece of Land,* 308 Pa. 454, 162 A. 445 (1932); *Mignatti Contruction Co. v. Environmental Hearing Board,* 49 Pa.Commonwealth Ct. 497, 411 A.2d 860 (1980); *Fox v. Pennsylvania Securities Commission,* 17 Pa.Commonwealth Ct. 72, 328 A.2d 573 (1974).

9. These terms are defined as follows in Section 102 of the Code, 75 Pa.C.S. § 102:
 'Driver's license.' A license or permit to drive a motor vehicle issued under [Title 75].
 . . . .
 'Operating privilege.' The privilege to apply for and obtain a license to use as well as the privilege to use a vehicle on a highway as authorized in [Title 75], but not a contract, property right or civil right.

10. Under the Code, the act of surrendering a driver's license relates to the issue of credit which is determined as of the date a resident motorist surrenders his or her driver's license. *See* Section 1541(a) of the Code, 75 Pa.C.S. § 1541(a).

of revocation also directed him to relinquish his driver's license: "In order to comply with this suspension/revocation, you are required to return any driver's license ... in your possession ... Credit will not begin until license is received by Bureau." It is this language upon which the common pleas court apparently based its statements "that Pennsylvania authorities have no power to revoke or suspend a driver's license issued by a sister State, here New Jersey" and that "[Cern] had already complied with the requirements of the notice [because] he had *already* surrendered his Pennsylvania license." At 178 (emphasis in original).[11]

As noted by the common pleas court, "this notice ... was sent to [Cern] at his old address in Pennsylvania." At 177. Obviously, DOT viewed Cern as a Pennsylvania resident and, accordingly, sent him a notice of revocation intended for resident motorists.[12]

Clearly, a notice of revocation of driving privileges can only be sent to a motorist's last known address. Here, Cern's last known address as recorded in DOT's official files was his former Pennsylvania address.

Cern, of course, bore the responsibility of informing DOT of his change of address pursuant to Section 1515 of the Code, 75 Pa.C.S. § 1515,[13] but there is nothing in the record

11. As noted above, the act of surrendering a driver's license relates to the issue of credit which is a determination to be made by DOT in the first instance. *Department of Transportation, Bureau of Driver Licensing v. Cardell,* 130 Pa.Commonwealth Ct. 516, 568 A.2d 999 (1990).

12. Section 1540(b) of the Code, 75 Pa.C.S. § 1540(b), directs DOT, upon the revocation of a person's operating privilege, to notify that person in writing at the address of record to surrender his or her driver's license to DOT for the term of the revocation. Section 1541(a) of the Code, 75 Pa.C.S. § 1541(a), explains that the period of revocation "shall commence as provided for in section 1540 (relating to surrender of license)" and that "[a] nonresident licensed driver ... shall submit an acknowledgment of ... revocation to [DOT] in lieu of a driver's license."

13. Section 1515 states in relevant part that "[w]henever *any* person after ... receiving a driver's license moves from the address named ... in the driver's license issued ... such person *shall*, within 15 days

to indicate that he did so.[14] Absent such notification of a change of address, it was neither unreasonable nor improper for DOT to rely upon the address officially listed in its records as Cern's last known address, despite a contrary address on the citation issued to Cern for his third offense.[15] Otherwise, Section 1515 of the Code, 75 Pa.C.S. § 1515, would be rendered ineffective. Moreover, to conclude differently might compel DOT to act contrary to a statutory directive that it issue written notices of suspension or revocation of operating privileges to persons at their addresses of record. *See* n. 12.

For the foregoing reasons, we will reverse the order of the common pleas court and reinstate the five-year revocation of Cern's Pennsylvania operating privilege imposed by DOT.[16]

KELLEY, J., dissents.

thereafter, notify the department *in writing* of the old and new addresses ..." (Emphasis added.)

14. We note in passing that there is also no evidence of record that New Jersey notified Pennsylvania of Cern's change of address or even that New Jersey has a statutory policy similar to that of Pennsylvania, found in Section 1501(c) of the Code, 75 Pa.C.S. § 1501(c): "All surrendered licenses issued by another state shall be returned to that state, together with information that the person is licensed in this Commonwealth."

15. In *Korell v. Department of Transportation, Bureau of Driver Licensing,* 122 Pa.Commonwealth Ct. 96, 551 A.2d 398 (1988), *petition for allowance of appeal denied,* 525 Pa. 606, 575 A.2d 571 (1990), DOT mailed ten suspension and revocation notices to the appellant's old address. The appellant pointed out that his new address appeared on citations which were issued to him. This court stated: "although two of the many citations which were issued to Appellant appear to contain Appellant's new address, the fact remains that Appellant failed to notify DOT of his change of address as required by [Section 1515 of] the Vehicle Code." *Id.,* 122 Pa.Commonwealth Ct. at 99, 551 A.2d at 400.

16. As previously noted, any credit determination must be made in the first instance by DOT. *See* n. 11. Such a determination here is, of course, complicated by Cern's noncompliance with Section 1515 which resulted in DOT treating him as a resident motorist who is required to surrender his driver's license in order to commence earning credit rather than as a nonresident motorist who is required to submit an acknowledgment of revocation in lieu of a driver's license.

## ORDER

AND NOW, this 24th day of February, 1992, the order of the Court of Common Pleas of Bucks County, dated January 17, 1991, at No. 90–006184–19–1, is hereby reversed and the five-year revocation of the operating privilege of John Cern, III, within Pennsylvania imposed by DOT pursuant to Section 1542 of the Vehicle Code, 75 Pa.C.S. § 1542, is reinstated.