**Eberhard Manfred MUELLER**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 1994.

Decided March 29, 1995.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

McGINLEY, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that sustained the appeal of Eberhard Manfred Mueller (Mueller) from a one-year suspension of his operating privileges for refusing to submit to chemical testing pursuant to Section 1547(b) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b).[1]

On October 30, 1992, Pittsburgh Police Officer Joseph W. Abel (Officer Abel) responded to an accident in the 1100 block of Liberty Avenue, Pittsburgh, Pennsylvania. Officer Abel arrived at the scene and found Mueller behind the wheel of his 1992 Chevrolet pickup truck after Mueller had backed into a vehicle while stopped at a traffic light. Officer Abel requested identification and noticed that Mueller's breath smelled of alcohol and that his speech was slurred. Mueller had to be assisted from his vehicle and was unsteady on his feet. Officer Abel did not request Mueller to perform any field sobriety tests because of his condition. Mueller was arrested and transported for the administration of a breathalyzer test.

At the police station, Police Officer James Anzelone (Officer Anzelone) requested Mueller to submit to a breathalyzer test and explained that pursuant to the implied consent law his license would be suspended for one year if he refused. Mueller agreed to submit to the test. Mueller did not supply an adequate amount of breath on his first and second attempt on the breathalyzer machine. Officer Anzelone determined that Mueller's failure constituted a refusal. By official notice dated December 7, 1992, DOT

Howard H. Cramer, Asst. Chief Counsel, for appellant.

Richard I. Thomas, for appellee.

1. Section 1547(b) of the Code provides in part: (1) If any person placed under arrest for violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted, but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

notified Mueller that his operating privileges were suspended for one year pursuant to Section 1547(b) of the Code for refusing to submit to chemical testing.

Mueller appealed his suspension to the trial court. At a *de novo* hearing Mueller testified that he complied with the request to submit to the test and that his breath sample was all he was physically capable of providing. Officer Anzelone testified that Mueller did not make "a proper effort" to blow into the machine and that Mueller did not inform him of any medical problems before taking the test. Notes of Testimony, May 26, 1993, (N.T.) at 11, 13. The trial court sustained Mueller's appeal, concluding that "in spite of the fact that a usable sample was not provided by the defendant ... the defendant made several good-faith efforts to comply with the officer's requests." Opinion of the Trial Court, July 28, 1993, at 2.

■ On appeal DOT contends that the issue of whether a licensee refuses to submit to a breathalyzer test is a question of law based upon the facts found by the trial court and that a licensee's "good faith" attempt is not a valid defense for failure to provide sufficient air samples. Our scope of review in a driver's license suspension case is limited to determining whether the trial court abused its discretion or committed an error of law and whether the court's findings are supported by competent evidence. *Wheatley v. Department of Transportation*, 136 Pa.Commonwealth Ct. 171, 521 A.2d 507 (1987). In cases involving the suspension of a driver's license for refusal to submit to

chemical testing, DOT must prove: 1) that the licensee was placed under arrest for driving under the influence; 2) that he was requested to submit to chemical testing; 3) that he was informed that a refusal to submit to such testing would result in a suspension of his operating privileges; and 4) that the licensee refused to submit to the test. *Department of Transportation, Bureau of Driver Licensing v. Pestock*, 186 Pa.Commonwealth Ct. 694, 584 A.2d 1075 (1990).

■ Initially, DOT contends that the refusal to submit to chemical testing is a mixed question of fact and law. The trial court initially finds the facts surrounding the licensee's response to a request to submit to chemical testing and the facts surrounding the performance of the test. The issue of whether there was a refusal is a question of law and reviewable by this Court. We agree.

In *Department of Transportation, Bureau of Driver Licensing v. Bender*, 107 Pa.Commonwealth Ct. 475, 529 A.2d 44 (1987), *reversed on other grounds*, 522 Pa. 104, 560 A.2d 123 (1989) [2] this Court noted the difference between a "finding of fact" and a "conclusion of law." We stated:

A 'finding of fact,' such as lies within the sole prerogative of the fact-finder, properly pertains to the actual events or conduct that occurred during the time period in question. A 'finding of fact,' therefore, is a determination by the finder or trier of fact that certain things do exist or that certain events or conduct actually occurred. By contrast, a 'conclusion of law' is the appli-

[2]. In *Bender*, Ralph Bender, a New Jersey resident with a valid New Jersey driver's license, was stopped by a Pennsylvania State Trooper after he was observed operating his vehicle in a reckless manner on the eastbound portion of the Pennsylvania Turnpike in Montgomery County. Bender was placed under arrest for driving under the influence and was advised of his *Miranda* rights (*Miranda v. Arizona*) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) and asked to consent to a breathalyzer test. Bender agreed and was transported to the State Police Barracks. At the barracks, after Bender was advised of the implied consent law and again was apprised of his *Miranda* rights, he refused to take the breathalyzer test until he spoke with his attorney. The trooper treated his response as a refusal. In *Bender* this Court reversed the Court of Common Pleas of Montgomery County and

concluded that the trooper's warning was sufficient to meet the requirements of 75 Pa.C.S. § 1547(b)(2). Our Pennsylvania Supreme Court reversed, citing its decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989) where the Supreme Court stated that "[s]ince the course of conduct of the police creates confusion in these cases, it is appropriate to place the duty on them to clarify the extent of the right of counsel when asking arrestees to take breathalyzer tests...." *O'Connell*, 521 Pa. at 253, 555 A.2d at 878. Subsequently, our Supreme Court has refined its decision in *O'Connell*. See *Commonwealth v. McFadden*, 522 Pa. 100, 559 A.2d 924 (1989); *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992); *Commonwealth, Department of Transportation v. McCann*, 533 Pa. 456, 626 A.2d 92 (1993).

cation of the facts established by the factfinder, here the common pleas court, and applying them to the applicable law. Therefore, the question whether a motorist's conduct as found by the common pleas court constitutes an unqualified, unequivocal assent to take a breathalyzer test is a *question of law* properly reviewable by an appellate court. (emphasis added).

*Id.* at 479, 529 A.2d at 46.

In *Department of Transportation, Bureau of Driver Licensing v. Kilrain,* 140 Pa.Commonwealth Ct. 484, 593 A.2d 932, *appeal denied,* 529 Pa. 625, 600 A.2d 541 (1991) this Court, en banc, reaffirmed our decision in *Fitzgerald v. Commonwealth of Pennsylvania,* 137 Pa.Commonwealth Ct. 359, 586 A.2d 483 (1991) and again noted that whether a licensee's conduct after a request to submit to chemical testing constituted a refusal was a question of law. Joseph Kilrain (Kilrain) was observed operating his vehicle in a haphazard manner by a Haverford Township Police Officer. Kilrain was arrested and transported to the police station for the administration of a breathalyzer test. Kilrain agreed to take the test and supplied one adequate sample of breath. However, on five subsequent attempts he was unable to provide a sufficient breath sample to complete the test. The police reported a refusal and DOT suspended Kilrain's *operating* privilege for one year. The trial court reversed the suspension, concluding that "DOT did not meet its burden of proving that Licensee had refused to submit to a breathalyzer test." *Id.,* 140 Pa.Commonwealth Ct. at 487, 593 A.2d at 933.

> On appeal this Court reversed and stated: In *Department of Transportation v. Berta,* 120 Pa.Commonwealth Ct. 558, 549 A.2d 262 (1988), ... [t]his court held that, *as a matter of law,* a good faith attempt to supply sufficient breath to complete a breathalyzer test is insufficient to excuse a licensee's failure to complete the test. The bedrock principal in *Berta* and *Jones* [*Department of Transportation, Bureau of Traffic Safety v. Jones,* 38 Pa.Commonwealth Ct. 400, 395 A.2d 592 (1978) ] is that failure to complete a breathalyzer test constitutes a refusal.

Applying the law to the facts of this case, it is clear that DOT met its burden. (emphasis added).

*Kilrain,* 140 Pa.Commonwealth Ct. at 489–90, 593 A.2d at 935.

■ In the present controversy, the trial court made the factual determination that Mueller complied with the request to submit to chemical testing and that he made several attempts to supply a breath sample. This Court is bound by that finding. *See O'Connell.* The issue of whether Mueller's conduct constitutes a refusal is therefore a question of law and is reviewable by this Court.

■ DOT next contends that Mueller's failure to provide sufficient air samples constituted a refusal to submit to chemical testing and that Mueller's alleged "good faith" attempt was not supported by medical evidence that he was physically incapable of performing the test.

67 Pa.Code § 77.24(b) provides:

> (b) **Procedures.** Alcohol breath tests shall be conducted by a certified breath test operator. Accuracy inspection tests and calibrations conducted using breath test equipment shall be performed by a certified breath test operator, the manufacturer or its authorized representative or a person who has received comparable training or instruction. Alcohol breath tests, accuracy inspection tests and calibrations conducted using breath test equipment shall be performed in accordance with accepted standard procedures for operation specified by the manufacturer of the equipment or comparable procedures. The procedures for alcohol breath testing shall include, at a minimum:

> (1) Two consecutive actual breath tests, without a required waiting period between the two tests.

> (2) One simulator test using a simulator solution designed to give a reading of .10%, to be conducted immediately after the second actual breath test has been completed. The lower of the two actual alcohol breath test results will be the result used for prosecution.

This Court has attempted to steadfastly recognize that a licensee's failure to provide breath samples sufficient to complete a breathalyzer test constitutes a refusal. *See Kilrain; Department of Transportation, Bureau of Driver Licensing v. Wilhelm,* 156 Pa.Commonwealth Ct. 24, 626 A.2d 660 (1993); *Department of Transportation, Bureau of Driver Licensing v. Lohner,* 155 Pa.Commonwealth Ct. 185, 624 A.2d 792 (1993); *Department of Transportation, Bureau of Driver Licensing v. Cavey,* 145 Pa.Commonwealth Ct. 154, 602 A.2d 494 (1992); *Department of Transportation v. Gross,* 146 Pa.Commonwealth Ct. 1, 605 A.2d 433 (1991); *Department of Transportation, Bureau of Driver Licensing v. Beatty,* 143 Pa.Commonwealth Ct. 272, 598 A.2d 1069 (1991).

Recently, in *Department of Transportation, Bureau of Driver Licensing v. Ingram,* 538 Pa. 236, 648 A.2d 285 (1994) our Pennsylvania Supreme Court reiterated this principle. In *Ingram,*[3] Officer Thomas West (West) responded to an accident and was advised at the scene that "a black sports car with Florida license plates" was involved in the collision but the operator fled the scene. *Id.* at 247, 648 A.2d at 290. A witness described the operator of the vehicle as being Oriental. West proceeded after the vehicle. After he spotted it, West followed the vehicle to a residence where he noticed damage to the vehicle's left front fender. West then found Ingram attempting to enter his house and after several minutes Ingram "surrendered to West." *Id.* at 247, 648 A.2d at 290. West administered a number of sobriety tests which Ingram failed. Ingram was arrested and transported to McKeesport Hospital for a blood test where a refusal was recorded. The trial court sustained Ingram's appeal, determining that the police department's warning form [concerning the implied consent law] was confusing.

On appeal the Supreme Court noted that a motorist's refusal to submit to chemical testing upon a proper request is a proper basis for a suspension of the motorist's license. The Supreme Court stated:

> In many cases a question has arisen as to what constitutes a refusal to take the chemical sobriety test within the meaning of the implied consent law. See *Dep't of Transp. v. Gross* ... *(failure to supply sufficient breath sample is conduct tantamount to a refusal to submit to chemical testing);* *Murray v. Commonwealth,* 143 Pa.Cmwlth. 358, 598 A.2d 1356 (1991) *(anything short of an unqualified, unequivocal assent to the request to submit to chemical testing is a refusal); Colgan v. Com., Dept. of Trans., Bureau of Driver Licensing,* 127 Pa.Cmwlth. 479, 561 A.2d 1341 (1989) *(motorist's insistence that blood sample be taken from his little toe was equal to a refusal to submit to chemical testing).* (emphasis added).

*Id.* at 253, 648 A.2d at 293.

A scrutiny of the record reveals that although Mueller testified that he agreed to submit to the breathalyzer test[4] he also stated that he was unable to provide a sufficient breath sample because of his sinus problems.[5] Mueller failed to introduce any medi-

---

3. The case of *Department of Transportation, Bureau of Driver Licensing v. Frain* was consolidated with *Ingram.* This Court only recounts the facts in *Ingram.*

4. Richard I. Thomas, Mueller's attorney, to Mueller:

Q: Do you remember being asked to submit to a breathalizer [sic]?
A: Yes.
Q: And what do you remember being told, and what did you do in response to being asked to submit to a breathalyzer?
A: To blow in this here machine.
....
Q: And did you in any respect refuse to provide a breath sample?
A: I didn't refuse nothing.

N.T. at 17–18.

5. Mr. Thomas to Mueller:

Q: Were you taking any medications at the time?
A: Yes, I was.
Q: Do you remember what kind of medication it was?
A: Well, it was for my sinus.
....
Q: Did you agree to do that?
A: I breathed in, and the officer said, "This is not good enough, blow again." So I blow in again, that's all I can do, because I could hardly get my breath. I have problems with sinus.

N.T. at 17–18.

cal testimony that his alleged sinus condition prevented him from properly performing the breathalyzer test. A failure to supply breath sufficient to actuate the test shifts the burden to the licensee to prove by competent medical evidence that he was physically unable to take the test. *Wilhelm*, 156 Pa.Commonwealth Ct. at 28, 626 A.2d at 662.

Finally, Mueller failed to inform either Officer Abel or Officer Anzelone of any medical problems, foreclosing the opportunity for any alternative chemical test. See *Larkin v. Commonwealth of Pennsylvania*, 109 Pa.Commonwealth Ct. 611, 531 A.2d 844 (1987) (a motor vehicle operator must advise the police of his medical condition when not readily apparent). Consequently, because Mueller failed to establish that he was physically incapable of performing the breathalyzer test, his failure to provide sufficient breath samples constituted a refusal.

Accordingly, we reverse the decision of the trial court and reinstate the suspension.

### ORDER

AND NOW, this 29th day of March, 1995, the order of the Common Pleas of Allegheny County at SA31 of 1993, dated May 26, 1993, is reversed and the license suspension is reinstated.

FRIEDMAN, Judge, dissenting.

I disagree that DOT established a *prima facie* case in support of a section 1547(b) license suspension because I do not believe that DOT met its burden of proving that Mueller refused to submit to chemical testing. Accordingly, I respectfully dissent.

In order to meet its burden of proof, DOT relied solely upon the testimony of Officer Anzelone that Mueller did not make "a proper effort" to blow into the machine. Howev-

er, other than this statement by Officer Anzelone, DOT presented no evidence to indicate that Mueller failed to exert a proper effort to provide a sufficient breath sample.[1] Rather, here, Mueller testified that he complied with the request to submit to the test and that his breath sample was all he was physically capable of supplying. The only evidence that he did not succeed, and thereby "refused" to submit to the test, was Officer Anzelone's testimony that the breath samples were deficient.[2] Presented with this evidence, the trial court believed Mueller.

However, citing *Department of Transportation, Bureau of Driver Licensing v. Kilrain*, 140 Pa.Commonwealth Ct. 484, 593 A.2d 932, appeal denied, 529 Pa. 625, 600 A.2d 541 (1991), the majority concludes that the trial court's credibility determination is irrelevant to the legal question of whether Mueller refused the test. I believe that by refusing to defer to the trial court's credibility assessment, the majority deprives the trial court of its role as fact finder. Questions of credibility and conflicts in the evidence presented are for the trial court to resolve, not our appellate courts. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).

*Kilrain* holds that a licensee's failure to supply a sufficient breath sample is a *per se* refusal. However, the majority's disregard of the trial court's credibility determination expands that holding, converting it to mean that if DOT *says* a licensee failed to provide a sufficient breath sample, it is *per se* true. I believe that such an expansion is improper and, accordingly, I would affirm the trial court.[3]

KELLEY, Judge, dissenting.

I respectfully dissent from the majority.

---

1. On this basis, I can distinguish this case from *Budd Appeal*, 65 Pa.Commonwealth Ct. 314, 442 A.2d 404 (1982), in which we determined that the licensee's failure to tighten his lips around the machine's mouthpiece, thus allowing air to escape so that a sufficient breath sample could not be obtained, indicated less than an honest effort to take the test and was tantamount to a refusal to submit to the test.

2. I note that DOT did not submit the printout from the breathalyzer machine or offer other evidence that the machine was in working order.

The lack of such evidence sets this case apart from *Department of Transportation, Bureau of Driver Licensing v. Lohner*, 155 Pa.Commonwealth Ct. 185, 624 A.2d 792 (1993), in which we held that the printout from a properly calibrated breathalyzer machine indicating a "deficient sample" constitutes a *per se* refusal to submit to chemical testing.

3. I have attempted to frame this dissent in a manner that does not conflict with *Kilrain;* however, to the extent that my position here is seen to contradict that opinion, I register my belief

The essential factual element of the case sub judice is that the trial court found that licensee had made a good faith effort of compliance with the taking of the test required under 75 Pa.C.S. § 1547.

I believe the recent decisions and opinions by our Supreme Court in *Ingram* and *Frain*, did sub silentio overrule our decision in *Kilrain*. *Ingram* represents that a factual determination as to whether or not adequate warnings were in compliance, as a matter of law, are to be determined by the trial judge. Likewise the determination by the trial judge, as in the case sub judice, of a good faith effort of compliance in taking the test, is subject to the same judicial standards. I believe the same standard applies. The trial judge makes the determination based upon credibility fact finding if the licensee had complied.

For the foregoing reasons, I would affirm the trial court and sustain the original appeal of the licensee.

that *Kilrain* was wrongly decided for the reasons set forth in the dissenting opinions of Judges McGinley and Pellegrini. Moreover, contrary to the holding in *Kilrain*, I am convinced that an unsuccessful good-faith effort to supply a sufficient breath sample is not a refusal. Black's Law Dictionary 1152 (5th ed. 1979) defines "refusal" as follows:

... the declination of a request or demand, or the omission to comply with some requirement of law, as the result of a positive intention to disobey. In the latter sense, the word is often coupled with "neglect," ... But "neglect" signifies a mere omission of a duty, which may happen through inattention, dilatoriness, mistake, or inability to perform, while "refusal" implies the positive denial of an application or command, or at least a mental determination not to comply.

The difference between a refusal and a good-faith failed effort is volition. This is a difference which *Kilrain* ignores.