578 A.2d 981

**Christopher VASILIADES, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 12, 1990.

Decided June 6, 1990.

Designated as Opinion to be Reported Aug. 2, 1990.

8

George J. Berry, III, Mercer, Mercer, Carlin & Schully, Pittsburgh, for appellant.

William A. Kuhar, Jr., Asst. Counsel, with him, Timothy P. Wile, Asst. Counsel in Charge of Appellate Section, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, for appellee.

Before CRAIG and COLINS, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Christopher Vasiliades (Appellant) has appealed from an order of the Court of Common Pleas of Allegheny County dismissing his appeal of his driver's license suspension. We affirm.

At the *de novo* hearing in common pleas court, Officer Edward Wenger of the Upper St. Clair Township police department testified that he observed Appellant's vehicle traveling in a northbound direction on Route 19, but zigzagging between the northbound and southbound lanes. He followed the vehicle and Appellant stopped at a gas station. When Appellant got out of his vehicle, Officer Wenger testified that he swayed and walked in an unsure manner. He detected the strong odor of alcohol and noted that Appellant's eyes were bloodshot and watery. He asked Appellant to perform several field sobriety tests, which he failed. Officer Wenger then placed Appellant under arrest for driving under the influence of alcohol and transported him to the police station, where Appellant was asked to submit to chemical testing and warned of the consequences of failure to do so. Appellant agreed to submit to testing.

Officer Wenger next testified that he explained to Appellant how to provide breathalyzer samples and that two consecutive tests were required. Appellant did not provide sufficient breath on the first try and was informed that he had to blow into the machine for approximately seven seconds. He stopped blowing too soon on the second try and Officer Wenger told him that although he could consider Appellant's failure to provide a sufficient sample a refusal, he would give him one more try. On the third try, the breathalyzer machine registered a reading of .251. However, Appellant's fourth sample was insufficient. Officer Wenger directed him to try again and Appellant argued with him. Upon the officer's sixth request, Appellant produced a sample which registered .260. Officer Wenger stated that he needed two *consecutive* samples and made his seventh request for a sample, which Appellant refused

to provide. Officer Wenger then performed a simulator test, which produced a .097 result before shutting off the machine.

Officer Wenger stated that he subsequently offered Appellant the opportunity to provide two consecutive breath samples, but Appellant refused and requested that he be taken to the hospital for a blood test. The officer testified that it was the Department's policy to transport anyone with such a high blood alcohol content to a hospital for observation and that he asked Appellant whether he would submit to a blood test. After first agreeing, Appellant refused to do so once at the hospital.

Appellant's version of the events was a bit different, particularly with respect to the events surrounding the breath tests. He testified that he followed the officer's directions and that he was given printouts of the readings from both tests. These printouts, admitted into evidence, bore the numbers 668 and 669 respectively and were marked, in Officer Wenger's handwriting, "test 1" and "test 2." Appellant further testified that he asked to be taken to the hospital for a blood test, although he would not submit to testing because he was asked to sign a form which the nurse refused to read to him. He stated that it was only at that point that Officer Wenger mentioned a refusal and its consequences. Finally, Appellant offered evidence to establish that he was charged with the criminal offense of driving under the influence (75 Pa.C.S. § 3731). The criminal complaint was admitted into evidence, but the criminal information was refused.

The trial court judge, in upholding Appellant's driver's license suspension for refusal to submit to chemical testing, specifically stated that he had resolved credibility issues in favor of the Commonwealth.

On appeal, Appellant raises four issues. We note that our scope of review is limited to a determination of whether the findings of fact are supported by competent evidence, errors of law have been committed, or whether the common pleas court's decision demonstrates a manifest abuse of

discretion. *Lane v. Department of Transportation*, 124 Pa.Commonwealth Ct. 246, 556 A.2d 12 (1989).

■ Appellant first argues that the trial court erred in finding that he refused to take the breath tests because the police officer's testimony, along with the evidence of the breathalyzer printouts and the criminal complaint against Appellant, establish that Appellant completed two breath tests.

The regulation governing the procedure for breath tests is found at 67 Pa.Code § 77.24(b). That section requires "[t]wo consecutive actual breath tests." Appellant's argument is, essentially, that he did not refuse because he supplied two consecutive breath test *results*.

We have held that the question of whether a driver has refused to submit to chemical testing is a question of fact. *Lane; Budd Appeal*, 65 Pa.Commonwealth Ct. 314, 442 A.2d 404 (1982). Further, it is well established that when a driver does not exert a total, conscious effort and thereby fails to provide a sufficient breath sample, such conduct is tantamount to a refusal to take the test, warranting suspension of his driver's license. *Budd Appeal.*

The trial court here, while it did not make specific findings of fact, did find a refusal based on Appellant's conduct in not cooperating by supplying insufficient samples despite repeated opportunities. Officer Wenger's testimony is certainly substantial evidence in support of this finding, given the fact that he stated that he was unsuccessful in securing two *consecutive* samples because Appellant stopped blowing into the machine before a result could be recorded.

Appellant places great emphasis upon the printout sheets from the breathalyzer machine, which were consecutively numbered and labeled "test 1" and "test 2," and upon the fact that the lower of the two results, .251, was used in prosecuting him under 75 Pa.C.S. § 3731. While the trial court could have chosen to give greater weight to this evidence than to Officer Wenger's testimony, it chose to resolve the conflicts in the Commonwealth's favor. The

officer testified that an insufficient test, which produced no reading, intervened between the two printout results, rendering the tests non-consecutive. Acceptance of this testimony was within the trial court's fact-finding powers and we will not disturb that finding upon appeal.

 Appellant's second argument is closely related to the latter portion of the first. He argues that the trial court committed reversible error in refusing to admit into evidence the criminal information charging Appellant with a violation of 75 Pa.C.S. § 3731. (We note that the criminal complaint, charging Appellant with violating this same section, was admitted). The basis of this argument is that, if the Commonwealth considered the test results valid for a criminal proceeding, it was error for the trial court here to refuse to consider them valid. Unfortunately for Appellant, we have addressed, and rejected, similar arguments in the past.

In *Croissant v. Commonwealth*, 114 Pa.Commonwealth Ct. 601, 539 A.2d 492 (1988), *petition for allowance of appeal denied*, 520 Pa. 578, 549 A.2d 138 (1988), we were faced with a very similar factual situation. The driver there had taken one breath test and the machine registered a .30 blood alcohol content. However, the driver failed to produce sufficient breath for a second reading and a refusal was recorded. We rejected the driver's argument that the first test was valid because it was used in determining the length of his license suspension under the accelerated rehabilitation disposition program to which he was subsequently admitted, repeating that "any criminal proceedings for driving under the influence have no bearing on the civil suspension proceedings under Section 1547." *Id.*, 520 Pa. at 605, 539 A.2d at 495. *See also Lane*.

Accordingly, because any criminal proceedings are unrelated to the issues presented in this civil appeal, we must conclude that the trial court did not err in either refusing to admit the criminal information or in not considering the fact that a criminal prosecution was apparently undertaken using the lower of these two breath test results.

Appellant's third and fourth arguments concern the circumstances surrounding Appellant's trip to the hospital. Both parties express some confusion as to the meaning of the following language contained in the second and third paragraphs of the trial court's three paragraph opinion:

> After several attempts [to take a breathalyzer test]—all of which were insufficient—Defendant changed his mind and asked for the opportunity to have a blood test, but he eventually refused that too.
>
> Defendant argues that he did not refuse, that he tried to cooperate. This Court disagrees. Seven times Officer Wenger told Defendant that he needed two consecutive samples, otherwise Defendant would be charged as refusing. This Court believes Officer Wenger made every effort to be reasonable.

(Trial court opinion at 1.)

Appellant's third argument is advanced in the event this Court were to conclude that Officer Wenger and not Appellant requested the blood test. Because the above-quoted language from the court's opinion makes it clear that the trial court found that it was Appellant who requested the test, we see no need to discuss this argument.

Appellant's fourth and final contention is that a driver may voluntarily request and then elect not to submit to a blood test without such action being construed as a refusal where he has previously successfully completed the requested breath tests. The flaw in this argument is immediately apparent: the underlying assumption is that Appellant *successfully* completed the breath tests. Having concluded above that Appellant refused to take the breath tests, whether he subsequently refused to submit to a blood test he himself requested is irrelevant.

For these reasons, we affirm the order of the trial court.

## ORDER

AND NOW, this 6th day of June, 1990, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

CRUMLISH, Jr., former President Judge, did not participate in the decision in this case.