598 A.2d 1356

**Charles A. MURRAY, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, Appellee.**

Commonwealth Court of Pennsylvania.

Argued April 30, 1991.

Decided Nov. 6, 1991.

Neil J. Marcus, for appellant.

Harold H. Cramer, Asst. Chief Counsel, for appellee.

Before COLINS and PALLADINO, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Charles A. Murray (Murray) appeals from an order of the Court of Common Pleas of Fayette County which dismissed his appeal from a one-year suspension of his operating privilege by the Department of Transportation (DOT) pursuant to Section 1547(b) of the Vehicle Code (Code) 75 Pa.C.S. § 1547(b).  We reverse.

On December 21, 1989, Murray was the driver of an automobile involved in an accident with a pick-up truck. Murray was transported by ambulance to the emergency room of Highlands Hospital.  Once at the hospital, Murray was placed under arrest by Connellsville Police Officer William J. Hixson (Officer Hixson) for driving under the influence of alcohol, 75 Pa.C.S. § 3731.  Officer Hixson requested Murray submit to a blood alcohol test and informed him that his operating privilege would be suspended for one-year if he refused.  Murray agreed to submit to the blood alcohol test as requested.

Officer Hixson informed Murray that two vials of blood would have to be withdrawn.  A medical technician began to draw blood from Murray's right arm.  Approximately one-third of a vial of blood had been collected when the needle in Murray's arm became dislodged.  Officer Hixson informed Murray that the test was not completed[1] and again advised him of the implied consent law.  Murray responded by stating that enough blood had been drawn

---

1. There is no evidence in the record as to the size of the vials in question or the volume of blood required to perform a blood alcohol analysis.

and he was not going to continue; thereupon, Officer Hixson recorded a refusal.

By official notice dated and mailed January 16, 1990, DOT notified Murray that his operating privilege was scheduled to be suspended for one-year pursuant to Section 1547 of the Code as a result of his refusal to submit to chemical testing to determine his blood alcohol content. Murray appealed his suspension to the Court of Common Pleas of Fayette County which, after a *de novo* hearing, entered an order dated July 5, 1990 dismissing his appeal. Murray filed this timely appeal.[2]

Section 1547(a) of the Code provides that any person who drives, operates or is in actual physical control of a motor vehicle in the Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance. 75 Pa.C.S. § 1547(a). Section 1547(b) of the Code provides that if any person placed under arrest for driving under the influence of alcohol or controlled substances is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, DOT shall suspend the operating privilege of the person for a period of 12 months. 75 Pa.C.S. § 1547(b).

In order to sustain a license suspension under Section 1547(b) of the Code, DOT must establish that the driver involved: (1) was arrested for driving while under the influence of alcohol; (2) that the driver was requested to submit to a chemical test; (3) that the driver refused to submit to the test; and (4) that the driver had been specifically warned that refusal would result in suspension of his driver's license. 75 Pa.C.S. § 1547(b); *Larkin v. Commonwealth*, 109 Pa. Commonwealth Ct. 611, 531 A.2d 844 (1987).

**2.** Our scope of review in driver's license suspension cases is limited to determining whether the findings of the trial court are supported by competent evidence, whether there has been an erroneous conclusion of law or whether there was a manifest abuse of discretion. *Wheatley v. Department of Transportation,* 104 Pa. Commonwealth Ct. 171, 521 A.2d 507 (1987).

It is undisputed that Murray was arrested for driving under the influence of alcohol, was requested to submit to a blood test, and had been specifically warned that refusal would result in a one-year suspension of his operating privileges. Murray asserts on appeal that DOT failed to satisfy its burden of proof that he refused to submit to the test.

For the purpose of Section 1547 of the Code, a refusal is anything substantially short of an unqualified, unequivocal assent to a police officer's request to submit to chemical testing. *Department of Transportation, Bureau of Traffic Safety v. Mumma,* 79 Pa. Commonwealth Ct. 108, 468 A.2d 891 (1983). This Court has interpreted Section 1547 of the Code to require that the licensee not only submit to or take the test, but also that he complete it. *Department of Transportation, Bureau of Traffic Safety v. Jones,* 38 Pa. Commonwealth Ct. 400, 395 A.2d 592 (1978) (motorist's failure to provide sufficient air to permit test to be made is tantamount to refusal, even where motorist expressed consent to test). The trial court concluded that, although Murray did consent to take the blood test, he did not adequately complete it; and because of his failure to do so, his actions constituted a refusal. Murray argues that the trial court erred by concluding that his failure to provide two vials of blood as requested constituted a refusal. Murray essentially argues that he completed the test since his blood was in fact drawn and subsequently tested.

The issue presented in this case is whether or not Murray did in fact complete the blood alcohol test. The trial court found that the one-third filled vial containing Murray's blood was taken to a crime laboratory where it was analyzed and the results were then used as evidence in the criminal proceedings brought against Murray. We note that this Court has consistently held that any criminal proceedings for driving under the influence of alcohol have no bearing on the civil suspension proceedings under Section 1547 of the Code. *Vasiliades v. Department of Transportation, Bureau of Driver Licensing,* 134 Pa. Commonwealth Ct. 7, 578 A.2d 981 (1990). However, we do not rest

our decision on the fact that the test results were used as evidence in Murray's criminal proceedings, but rather on the fact that standards relating to blood and urine (bodily fluids) have not been promulgated by the Department of Health as required by Section 1547(c)(2) of the Code. 75 Pa.C.S. § 1547(c)(2).

The trial court determined that DOT was responsible for enacting any regulations regarding procedures for blood tests and since DOT[3] had not yet enacted such regulations, the responsibility devolved upon the local police departments. Officer Hixson testified that the standard procedure of the Connellsville Police Department is to request two vials of blood for alcohol testing purposes. The trial court found that such a request was not unreasonable and concluded that Murray was required to provide two vials of blood in order to complete the test.

Section 1547(c)(2) of the Code provides as follows:

(2) Chemical tests of blood or urine shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose *using procedures and equipment prescribed by the Department of Health.* For purposes of blood and urine testing, qualified person means an individual who is authorized to perform those chemical tests under the act of September 26, 1951 (P.L.1539, No. 389), known as "The Clinical Laboratory Act."[1] (Emphasis added.)

  [1] 35 P.S. § 2151 *et seq.*

75 Pa.C.S. § 1547(c)(2). (Footnote in original.)

Clearly, the Code specifically provides that the Department of Health is empowered to enact regulations which prescribe the procedures for chemical tests of blood or urine.[4]

3. It will be established hereinafter that the responsibility for enacting regulations regarding procedures for blood tests rests with the Department of Health and not DOT.

4. Section 1547(c)(1) of the Code provides that chemical tests of breath should be performed using procedures prescribed jointly by regulations of the Department of Health and DOT. 75 Pa.C.S. § 1547(c)(1). The regulations concerning chemical tests of breath are set forth in

Neither DOT nor the local police departments are authorized to do so. Accordingly, whether Murray complied with the procedures established by the Connellsville Police Department requiring two vials of blood is irrelevant.

The Department of Health's regulations for blood alcohol testing are set forth in Title 28 of the Pennsylvania Code, 28 Pa.Code §§ 5.101–.104. Regulation 5.101 sets forth that its purpose is to satisfy the requirements of Section 1547(c) of the Code. Regulation 5.103 governs blood test for blood alcohol content and provides as follows:

Equipment used for blood analysis to determine the amount of alcohol in a person's blood which performs the analysis by means of gas chromatography, enzymatic procedures, distillation procedures or diffusion procedures is approved by the Department provided that:

(1) The equipment is located within a clinical laboratory currently licensed by the Department.

(2) The particular brand or model of equipment used and a reagent or procedures relating thereto have not been prohibited by specific notification of the Department under § 5.46 (relating to reagents and equipment).

Title 67 of the Pennsylvania Code, 67 Pa.Code §§ 77.1–77.27. Regulation 77.24 provides that the procedures for alcohol breath testing shall include, at a minimum:

(1) Two consecutive actual breath tests, without a required waiting period between the two tests.

(2) One simulator test using a simulator solution designed to give a reading of .10%, to be conducted immediately after the second actual alcohol test has been completed. The lower of the two actual breath test results will be the result used for prosecution. The test results will be disregarded, and the breath test device will be removed from service under § 77.25(b)(4) (relating to accuracy inspection tests for Type A equipment) if one of the following occurs:

(i) If the difference between the results of the two actual alcohol breath tests is .02 or more, for machines read to the second decimal place, or .020 or more for machines read to the third decimal place.

(ii) If the simulator test yields a result less than .09% or greater than .10% when the breath test device is read to the second decimal place, or if the simulator test yields a result less than .090% or greater than .109% when the breath test can be read to the third decimal place.

67 Pa.Code § 77.24(b).

(3) A clinical laboratory performing blood analyses with the equipment has in effect an approval to provide the special analytical services under § 5.50 (relating to approval to provide special analytical services).

28 Pa.Code § 5.103.

The Department of Health's regulations fail to specify the minimum amount of blood required to perform a blood alcohol content test and thus fails to establish standards for determining what constitutes completion of a blood test.

The Department of Health also has regulations for procedures regarding the collection of specimens. 28 Pa. Code §§ 5.41–.50. Specimens are defined as "[o]nly materials derived from the human body regardless of the physical character of such material." 28 Pa. Code § 5.1. Blood extracted from Murray fits this definition. Regulation 5.41 sets forth the procedures for the acceptance and collection of specimens. 28 Pa.Code § 5.41. However, once again the regulations fail to specify the minimum amount of a specimen, blood here, required in order to be able to perform a blood alcohol content test. Accordingly, without the existence of minimum completion standards, the trial court erred by concluding that Murray refused to comply with Officer Hixson's request to submit to a blood test. Albeit that Murray provided only one-third of one of two vials requested, the facts remain that he submitted to having blood drawn, which was in fact sufficient to perform the analytical test to determine alcohol content.

If this Court were to adopt the reasoning of the trial court, that the local police departments are free to establish their own procedures, the potential exists for over 2,600 [5] different requirements for the amount of blood needed to complete the blood test. All that Murray was required to do, by statute or regulation, was to submit to giving a

---

**5.** As of 1989, there were 67 counties, 55 cities, 966 boroughs, 1 incorporated town and 1,500 townships in Pennsylvania. Figures are based upon the 1980 census information and are found in The Pennsylvania Manual, Volume 109, December 1989. The Pennsylvania Manual is published every two years with the next edition, based upon 1990 census information, to be published in December 1991.

sample of his blood for the purpose of determining its alcoholic content or the presence of a controlled substance. This he did. In the absence of standards regarding the amount of blood required for testing for the presences and amount of alcohol and/or controlled substances, one cannot be deemed to have refused to submit to a complete test where a sufficient sample of blood was provided to perform a blood analysis.

Section 1547(a) of the Code was amended on December 15, 1982 to authorize the chemical testing of urine in addition to breath and blood. Section 1547(c) was also amended and authorized the Department of Health and DOT to jointly prescribe regulations for the chemical test of breath. *See* 67 Pa. Code § 77.21 *et seq.* Similarly, Section 1547(c)(2) authorized the Department of Health to prescribe procedures for the chemical tests of blood or urine. However, the Department of Health has yet to establish standards for the volume or amount of bodily fluids required in order for a chemical test to be performed.

There are in place well established rules governing the procedures for obtaining and analyzing breath to determine alcohol levels. No such rules exist for establishing procedures for obtaining and analyzing blood or urine to determine alcohol or controlled substances levels. We suggest that DOT urge the Department of Health to fill this void if DOT is to effectively perform its duties relating to the enforcement of motor vehicle operation within the Commonwealth.

## ORDER

AND NOW, this 6th day of November, 1991, the order of the Court of Common Pleas of Fayette County, dated July 5, 1990, is reversed and the appeal of Charles A. Murray from the suspension of his driver's license is sustained.