**Troy Lynn LUCAS, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF MOTOR VEHICLES.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 11, 2004.

Decided July 15, 2004.

---

Kevin J. Rozich, Johnstown, for appellant.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN.

Troy Lynn Lucas (Licensee) appeals an order of the Court of Common Pleas of Cambria County that upheld the suspension of his driver's license by the Department of Transportation, Bureau of Driver Licensing (Department), on the basis that he had failed to submit to chemical testing under Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b), commonly referred to as the Implied Consent provision. On appeal Licensee asserts that the Department never proved: 1) that he had refused to submit to the testing, and 2) that he was advised that the consequence of a refusal to submit to testing would be a one-year suspension of his driver's license.

The trial court found that on August 3, 2003, Licensee was stopped by Officer Nathan Stohon after the officer observed Licensee failing to stop at a stop sign and then failing to remain in his own lane of travel. Officer Stohon stated that after stopping Licensee, he observed that Licensee had a dazed look on his face and smelled of alcohol. The officer conducted two sobriety tests, both of which Licensee failed. He stated that he took Licensee into custody and transported him to the police department in Adams Township in order to have him undergo a breathalyzer test. He testified that he advised Licensee "that if he refused the test he would lose his license for a period of one year and still be charged with a DUI." (N.T. 9.) He further stated that he "verbally went over [the warnings]" while driving him to the police station and then "read him the form [DL–26]" after they arrived. (N.T. 9–10.)[1] At the police station Licensee signed the DL–26 form indicating that he had read the warnings. (N.T. 11, Department Ex. 1).

The trial court further found that the breathalyzer test was administered by Officer Jeffrey Bence, who was certified to operate the machine. There were two attempts to secure a proper test. Regarding the first one, the testimony reveals that Licensee consented to take the test, the machine self calibrated and Licensee then had 2½ minutes to supply two breaths. (N.T. 28–30.) Both officers agreed that, after the calibration, Licensee engaged in "stalling techniques," when he demanded that Officer Stohon fill out paperwork relating to an alleged search of his vehicle.[2] This action caused the machine to issue a "refusal slip" because of the time lapse. Officer Stohon indicated that he would not count this action as a refusal and destroyed the refusal ticket that the breathalyzer machine had printed out. (N.T. 12, 34.)

With regard to the second attempt, both Officer Stohon and Officer Bence testified that Licensee was not forming a seal on the mouthpiece of the breathalyzer. Consequently, air was escaping his mouth. (N.T. 13, 28–29.) Thus, he was unable to supply a proper breath sample. Eventually, the machine's self-regulated testing time elapsed and also recorded this testing attempt as a refusal. Based on this evidence, the trial court held that Licensee had refused to submit to chemical testing and upheld the Department's suspension action. Licensee now appeals here. He contends on appeal that the Department has failed to meet its burden to prove that 1) he refused to take the breathalyzer test and 2) he was given a proper warning as to the consequences of a refusal.[3]

■ Section 1547(b), at the relevant period in time,[4] stated as follows:

**Suspension for refusal.**

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or

1. This form pertinently states: "It is my duty, as a police officer, to inform you that if you refuse to submit to the chemical test your operating privilege will be suspended for a period of one year." (Department Ex. 1).

2. According to Officer Stohon, no such search ever took place. (N.T. 12.)

3. Our scope of review is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether it committed an error of law or an abuse of discretion. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). Matters of credibility and conflicts in the evidence are for the trial court to resolve. *Id.*

4. This provision has since been repealed in part and amended in part, but the changes do not affect his case.

controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

Under Section 1547(b) of the Vehicle Code, the Department has the burden to establish that the licensee (1) was arrested for driving while under the influence of alcohol; (2) was asked to submit to a breathalyzer test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the suspension of his driver's license. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 248, 555 A.2d 873, 876 (1989). Licensee asserts that the Department has not met elements three and four of this burden.

 We address first the issue of whether Licensee refused to take the breathalyzer test. In considering the question of whether a licensee has refused to comply with the Implied Consent provision:

We have consistently held that anything substantially less than an unqualified, unequivocal assent to take a breathaly-

zer test constitutes a refusal under § 1547.... A refusal need not be expressed in words, but can be implied from a motorist's actions. For example, a motorist's failure to provide sufficient air to permit the test to be made is tantamount to a refusal....

*Department of Transportation, Bureau of Traffic Safety v. Mumma*, 79 Pa.Cmwlth. 108, 468 A.2d 891, 892 (1983). Stalling tactics also indicate a refusal. *Mashuda v. Department of Transportation, Bureau of Driver Licensing*, 701 A.2d 301 (Pa. Cmwlth.1997).

 The facts here demonstrate that Licensee did stall in the first testing attempt.[5] However, Officer Stohon decided not to "count" this incident and provided Licensee with another opportunity to take the test. It is, therefore, the conduct of this second testing attempt that is in issue here.

Licensee relies on Department Regulation 77.24(b), 67 Pa.Code § 77.24(b), for the notion that he has to be provided the opportunity to take two separate breathalyzer tests. This Regulation states that:

The procedures for *alcohol breath testing* shall include, at a minimum:

(1) Two consecutive actual breath *tests*, without a required waiting period between the two *tests*.

(Emphasis added.) Licensee asserts that he was not given a chance to take two separate alcohol breath *tests* in accordance with the Regulation since Officer Stohon did not count the first testing attempt. The Department counters that what "alco-

---

**5.** As the trial court wrote," [Licensee] had no other motive than to stall his taking of the breathalyzer test when he engaged in a prolonged and unfounded discussion with the police officers.... [T]he breathalyzer is time sensitive and a test must be taken within the

short time frame. Due to the [Licensee's] stalling tactics, specifically his arguing with the officers regarding an alleged search of his vehicle, an accurate test could not be accomplished." (Trial Court Op., pp. 4–5.)

hol breath testing" requires is two breath *samples.*

The key to this inquiry is the definition of "alcohol breath test," a term defined in the Department's Regulation 77.22 as "Chemical testing of *a sample* of a person's expired breath, using breath test equipment designed for this purpose, in order to determine the concentration of alcohol in the person's blood." 67 Pa.Code § 77.22. Thus, each "alcohol breath test" requires *a,* *i.e.,* one, sample. The record is clear that Licensee was provided the opportunity to supply two breath *samples*[6] and, thus, he was given two "alcohol breath *tests.*" We, therefore, hold that the record demonstrates that Licensee was provided the opportunity to take two "tests" as that term is used in the Regulation.

We note that this interpretation of the Regulation is supported by case law in which the recitation of the factual history makes it clear that the testing procedure involves obtaining two breath *samples.* *See, e.g., Vasiliades v. Department of Transportation, Bureau of Driver Licensing,* 134 Pa.Cmwlth. 7, 578 A.2d 981 (1990); *Flickinger v. Department of Transportation,* 119 Pa.Cmwlth. 315, 547 A.2d 476 (1988). In *Vasiliades,* the police officer testified that he offered the licensee "the opportunity to provide two consecutive breath *samples*" and further stated that "he was unsuccessful in securing two con-secutive *samples* because [licensee] stopped blowing into the machine before a result could be recorded." *Id.* at 982, 983. (Emphasis added.) In *Flickinger,* the police officer told the licensee that "he would have to provide two breath *samples* in order to complete the test." *Id.* at 477. (Emphasis added.) [7]

In his second issue, Licensee contends that he was not given an adequate warning as to the consequences of his refusal. He argues specifically that he was not told he would "definitely" lose his license if he refused to take the test. (Licensee's Brief, p. 13.) However, Officer Stohon testified, "I also informed [Licensee] that if he refused the test he *would* lose his license for a period of one year and still be charged with a DUI" (N.T. 9.) (Emphasis added.) He additionally stated that, at the police station, he read Licensee the DL–26 form, which contains the implied consent warnings. Licensee points out that Officer Bence testified that Officer Stohon told Licensee he "may" lose his license, rather than that he "would" lose it. This does not matter because the trial court found, "that [Licensee] was fully apprised of his rights regarding the breathalyzer test *based on the credible testimony of Officer Stohon.*" (Trial Court Op., p. 3). (Emphasis added.) Because credibility matters are solely within that court's province, *O'Connell,* Licensee cannot prevail on his argument that he did

---

6. His first sample was insufficient and he ran out of time to supply the second.

7. There are times when the words "sample" and "test" have been used interchangeably. For example, the recitation of the facts in *Flickinger* includes the following:

 Appellant initially agreed to submit to the breath test and at 12:10 a.m. he provided a breath *sample.* The breathalyzer machine printed out a reading of .273. Appellant would not provide a second breath *sample* despite the fact that Officer Grissom again explained to him that he would lose his operating privileges for one year if he did not do so. At 12:13 a.m. the breathalyzer machine purged itself. Appellant testified that during this time he was asking Officer Grissom why he had to take the second *test.* Appellant testified that he then agreed to provide a second breath *sample* but Officer Grissom stated it was too late because the machine had already purged itself.

 *Id.* at 477. (Emphasis added.)

not receive a proper warning of the consequences of refusing to take the breathalyzer test.

Having concluded that the evidence supports a finding that Licensee refused the breathalyzer test despite being given proper warnings, we affirm the order of the trial court.[8]

## *ORDER*

**NOW,** July 15, 2004, the order of the Court of Common Pleas of Cambria County in the above-captioned matter is hereby affirmed.

---

8. Licensee also asserts that the Department did not prove that the breathalyzer machine was properly calibrated and accurate. However, once the Department proves the refusal, the accuracy of the breathalyzer machine is not in issue. *Books v. Department of Transportation, Bureau of Driver Licensing,* 109 Pa. Cmwlth. 25, 530 A.2d 972 (1987).