J-S73029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANGELA THOMAS | |
| Appellant | No. 418 WDA 2016 |

Appeal from the Judgment of Sentence March 15, 2016
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000928-2015

BEFORE: FORD ELLIOTT, P.J.E., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:             **FILED NOVEMBER 22, 2016**

Angela Thomas appeals from the judgment of sentence, entered in the Court of Common Pleas of Fayette County, following her conviction of Driving Under the Influence of Alcohol ("DUI"),[1] Driving While BAC is .02% or Greater while License Suspended,[2] Disregarding a Traffic Lane,[3] and Careless Driving.[4] Finding no error, we affirm.

The trial court set forth the factual history as follows:

[D]uring the early morning hours of April 12, 2105 in North Union Township, Fayette County, Pennsylvania[,] Pennsylvania

_____

[1] 75 Pa.C.S. § 3802(a)(1).

[2] 75 Pa.C.S. § 1543(b)(1.1)(i).

[3] 75 Pa.C.S. § 3309(1).

[4] 75 Pa.C.S. § 3714(A).

State Police were dispatched to the area of Bute Road and Oliver Road for a report of a vehicle crash. When police arrived, they observed a silver Chrysler 300 with a vanity plate that read "Ms. Thomas" to have hit a tractor trailer truck that was parked off the roadway. The operator of the Chrysler was not at the scene, which prompted police to canvass the area. Troopers Robert Schmid and Jason Ashton observed a black female, later identified as [Thomas], staggering northbound on Bute Road approximately one-half mile from where the crash occurred. The area was described as having "minimal to [no] automobile traffic" and "zero" pedestrian traffic at that time of day. When Trooper Schmid made contact with [Thomas], she refused to answer any questions regarding her whereabouts. Furthermore, Trooper Schmid observed [Thomas] to have glassy, bloodshot eyes, staggered gait, and the odor of an alcoholic beverage emanating from her. At that point, she was placed into custody, read her **Miranda**[5] rights, and transported to the crash scene. While inside the police cruiser, [Thomas] initiated a conversation with Trooper Ashton. She asked what was presently happening, and he explained that they were trying to ascertain who the driver of the vehicle was. He then asked her if she was driving the vehicle, to which she answered in the affirmative. Upon learning that information, Trooper Michael Carcella, the affiant, took [Thomas] into his custody while he continued investigating the crash. He then asked [Thomas] to perform a series of field sobriety tests, include the horizontal gaze nystagmus ("HGN") and walk and turn tests. [Thomas'] performance was unsuccessful, and she refused to perform any further tests. Based on her unsuccessful completion of the field sobriety tests, she was then transported to Uniontown Hospital for a blood draw. She was read the **O'Connell**[6] warnings and began

_____

[5] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[6] The court refers to the refusal warnings as "**O'Connell** warnings." **See Dep't of Transp., Bureau of Traffic Safety v. O'Connell Department of Transportation v. O'Connell**, 555 A.2d 873 (Pa. 1989). The **O'Connell** warnings are a statement of an operator's rights pursuant to section 1547 of the Vehicle Code, as amended, 75 Pa.C.S. § 1547, commonly known as the Implied Consent Law. In **O'Connell**, the Pennsylvania Supreme Court discussed the burdens of proof applicable in license suspension cases as follows:

*(Footnote Continued Next Page)*

arguing with Trooper Carcella and hospital staff that she had a right to a breath, not blood, test. Trooper Carcella explained to [Thomas] that there were no . . . certified breathalyzer operators available, and a blood test was her sole option. Despite being warned of the penalty for refusing to submit to a blood sample, [Thomas] continued engaging in "belligerent behavior" and never submitted to the blood draw. As a result of this incident, the aforementioned charges were filed.

Trial Court Opinion, 3/15/16, at 2-4.

A jury convicted Thomas, and the court sentenced her to three years of County Intermediate Punishment, the first twelve months to be spent under house arrest with electronic monitoring. This appeal followed.

Thomas raises the following issues for our review:

1. Whether the evidence presented at trial sufficiently established that [Thomas] drove, operated or was in actual physical control of the movement of the vehicle while intoxicated on April 12, 2015;

2. Whether the evidence presented at trial was sufficient to establish that [Thomas] refused to submit to chemical testing to determine amount of alcohol or controlled substance on the date of the incident;

3. Did the trial court err in denying [Thomas'] motion for mistrial following the trooper's testimony [Thomas]

_(Footnote Continued)_ ───────────────

[U]nder Section 1547(b) of the Vehicle Code, the Commonwealth must establish that the driver involved: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a breathalyzer test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the revocation of his driver's license.

Once the Commonwealth meets its burden, it is the driver's responsibility to prove that he or she was not capable of making a knowing and conscious refusal to take the test. **_Id._** at 876.

> refused to speak with the troopers following the incident, in violation of [Thomas'] Fifth and Sixth Amendment rights.

Appellant's Brief, at 7.

First, Thomas challenges the sufficiency of the evidence. She contends the Commonwealth failed to prove that she "drove, operated or was in actual physical control" of the vehicle while intoxicated on the date of the incident, a necessary element of the offense of DUI. 75 Pa.C.S. § 3802(a)(1).[7]

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of

---

[7] § 3802. Driving under influence of alcohol or controlled substance

**(a) General impairment.--**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely *driving, operating or being in actual physical control of the movement of the vehicle.*

75 Pa.C.S. § 3802(a)(1) (emphasis added).

proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Devine*, 26 A.3d 1139, 1145 (Pa. Super. 2011).

The term "operate" requires "evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." *Commonwealth v. Johnson*, 833 A.2d 260, 263 (Pa. Super. 2003), quoting *Commonwealth v. Wilson*, 660 A.2d 105, 107 (Pa Super. 1995). The *Johnson* court clarified that "[u]nder Pennsylvania law, an eyewitness is not required to establish that a defendant was driving, operating, or was in actual physical control of a motor vehicle. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle." *Johnson*, 833 A.2d at 263.

Here, three Pennsylvania State Troopers testified that a silver Chrysler 300, with the vanity plate, "Ms. Thomas," had struck a parked tractor-trailer. After determining the operator had fled the scene, Trooper Schmid canvassed the area, observed a female one-half mile from the scene, later determined to be Thomas, who had bloodshot eyes and smelled of alcohol. N.T. Trial, 3/9/16, at 30-33, 42-53. Thomas was transported back to the scene, placed into custody, and given *Miranda* warnings. *Id.* at 35.

Thereafter, Thomas admitted to Trooper Ashton that she was the operator of the Chrysler. *Id.* at 46.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the evidence, both direct and circumstantial, was sufficient to establish that Thomas "drove, operated, or was in actual physical control" of the vehicle. *See Commonwealth v. Woodruff*, 668 A.2d 1158 (Pa. Super. 1995) (determination of actual physical control of vehicle is based upon totality of circumstances, including location of vehicle, whether engine was running and whether there was additional evidence indicating defendant had driven vehicle prior to arrival of the police.). Accordingly, Thomas' challenge to the sufficiency of the evidence to sustain her conviction for DUI is meritless.

Next, Thomas argues the evidence was insufficient to establish that she refused to submit to chemical testing.[8] This claim is also meritless.

The evidence established that after being transported to Uniontown Hospital for a blood draw, Thomas became belligerent and argumentative. Trooper Carcella testified as follows:

_____

[8] *See* 75 Pa.C.S. § 1547(b) (suspension for refusal) ("(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows: (i) Except as set forth in subparagraph (ii), for a period of 12 months. (ii) For a period of 18 months if any of the following apply: (A) The person's operating privileges have previously been suspended under this subsection."). *See also* 75 Pa.C.S. § 3804(c).

Q: Did you advise her why she was going to Uniontown Hospital?

A: Yes, I did. I explained to her that based on my observations from the [field] test, I felt she was under the influence of alcohol, so we took her to Uniontown Hospital where I requested her to submit to a blood draw.

* * * *

Q: You mentioned about the warnings, what warnings are you talking about?

A: They are the O'Connell Warnings, commonly referred to as the Implied Consent Warnings. . . . when you are arrested for D.U.I., it is a form that we have to read to you to explain to you that if you do not submit to chemical testing, if you refuse to . . . have blood drawn or to submit to a breath test . . . you are subject to more severe penalties. . . . It would be the same if you were convicted under driving at the highest rate of alcohol. It includes, I think a maximum fine of ten thousand dollars and a year suspension on your license, plus possible incarceration.

* * * *

Q: What happened next after you gave her these warnings, Tooper?

A: Ms. Thomas became argumentative with myself and Corporal Despot . . . she was yelling at us. She was belligerent with myself and with hospital staff and she said that she had the right to submit to a breath test. . . I asked her several more times, I said that the test – we don't have anyone certified to run the intoxalyzer machine. The opportunity being given to you right now is the blood draw, so if you are not going to submit to the blood draw, it is going to be a refusal.

Q: You gave her that warning?

A: Absolutely, sir. . . . She continued to argue and I argued with her for probably three or four minutes, and then I figured it was a refusal. . . . She was yelling. I mean, she was hostile. I mean, she was upset obviously, and she felt that she had the right to a breath test and I explained to her that we are here to do a blood draw.

Q: And ultimately you determined that she refused the blood draw?

A: Yes, sir.

N.T. Trial, 3/9/16, at 60-62.

Thomas argues that the evidence was insufficient to establish that she refused to submit to chemical testing because "three (3) to four (4) minutes is an insufficient amount of time to expect a motorist, especially one who may be under the influence of alcohol, to comprehend the implied consent law and decide whether to comply or not." Appellant's Brief, at 14. We disagree.

Thomas provides no legal support for her argument that there is a time requirement for determining consent to chemical testing. The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court. *See Gregro v. Com., Dept. of Transp., Bureau of Driver Licensing*, 987 A.2d 1264, 1267 (Pa. Cmwlth. 2010). What amounts to a "refusal" for purposes of section 1547(b)(1) is not defined under the statute. However, in construing section 1547(b)(1), the Pennsylvania Supreme Court has stated that "any response from a licensee that is anything less than an `unqualified, unequivocal assent' to submit to testing constitutes a refusal, subjecting the licensee to the one-year suspension." *Todd v. Com., Dept. of Transp., Bureau of Driver Licensing*, 723 A.2d 655, 658 (Pa. 1999) (quoting *Com., Dept. of Transp. v. Renwick*, 669 A.2d 934, 939 (Pa. 1996)). *See Dep't of Transp. v.*

*Gross*, 605 A.2d 433 (Pa. Cmwlth. 1991) (failure to supply sufficient breath sample is conduct tantamount to refusal to submit to chemical testing); *Murray v. Commonwealth*, 598 A.2d 1356 (Pa. Cmwlth. 1991) (anything short of unqualified, unequivocal assent to request to submit to chemical testing is refusal); *Colgan v. Com., Dept. of Trans., Bureau of Driver Licensing*, 561 A.2d 1341 (Pa. Cmwlth. 1989) (motorist's insistence that blood sample be taken from his little toe was equal to refusal to submit to chemical testing).

Here, the evidence established that Thomas' conduct was inconsistent with "unequivocal assent." After our review of the record, we are satisfied with the trial court's finding that Thomas refused to submit to chemical testing. *Com. Dept. of Transp., Bureau of Driver Licensing v. Ingram*, 648 A.2d 285 (Pa. 1994).

In her final issue, Thomas claims that the trial court erred in denying her motion for mistrial after Trooper Schmid testified that she initially refused to answer questions regarding her whereabouts that evening. Thomas argues Trooper Schmid's testimony violated her right to remain silent and her right against self-incrimination.

We review the denial of a motion for mistrial for an abuse of discretion.

> [T]he trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the

degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion.

***Commonwealth v. Hogentogler***, 53 A.3d 866, 877–78 (Pa. Super. 2012) (citations omitted). "The remedy of a mistrial is an extreme remedy required 'only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.'" ***Id.*** at 878 (citations omitted).

Here, Thomas refers to Trooper Schmid's testimony recounting the accident investigation:

> Q: [W]hen you encountered the defendant, were you already aware that a crash had occurred up the road?
>
> A: We were aware that there was a crash right up the road.
>
> Q: Now, where on Bute Road did you encounter the defendant in proximity to the crash site?
>
> A: It was approximately a half mile away in the area of Orchard Avenue on Bute Road is where we encountered her. . . . she was by herself. . . . She was walking – she had a purse on over her shoulder, and she was noticeably staggering down the roadway.
>
> Q: What did you do next.
>
> A: That's when we pulled over directly in front of her. We noticed her from a distance, so we crossed over into the southbound lanes, pulled directly in front of her and activated the emergency lights and we put a spotlight on her, and then that's when I exited my vehicle to make contact with her. . . . **When I made contact with her, she made no statements. She wouldn't speak. I questioned her where she was coming from, how she got here, what was going on. There was no response the entire time I spoke with her.**

- 10 -

N.T. Trial, 3/9/16, at 32-33 (emphasis added).[9]

Contrary to Thomas' argument, Trooper Schmid's testimony was not aimed at highlighting her pre-arrest silence; it merely relayed his investigation of the crash. Observing a woman one-half mile from the scene of an accident, at an hour where there is no pedestrian traffic in the area, Trooper Schmid was obligated to question her. The statement was not utilized to provide substantive evidence of Thomas' guilt, but instead was recounted in the context of Trooper Schmid's initial interaction with her. We agree with the trial court that this was a passing reference and that there was no misconduct or prejudicial error. Trooper Schmid's statement did not deprive Thomas of a fair and impartial trial. **See Commonwealth v. Adams**, 104 A.3d 511, 517 (Pa 2014) ("mere reference to a defendant's silence does not necessarily impinge constitutional rights when guilt is not implied"). We find no abuse of discretion. **Hogentogler**, **supra**.

Judgment of sentence affirmed.

---

[9] At this point in the testimony, defense counsel moved for a mistrial. **See** Pa.R.Crim.P. 605(B) ("When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed."); **see also Commonwealth v. McAndrews**, 430 A.2d 1165, 1167 (Pa. 1981) (failure to a timely request for mistrial waives issue).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/22/2016